Mintz v. Pixarbio Corporation Good afternoon, your honors. May it please the court, I'm Alan Defraud, appearing pro se as the Attorney General of the U.S. Department of Justice. I'm one of the appellants. The district court's decision being appealed granted Defendant Apelli's ballot-sparse motion for summary judgment concluding that my former law firm, Mintz Fraud Law Firm, is not entitled to the Interpreter Fund due to non-waivable conflicts of interest with respect to the law firm's purported personal stake in the SEC's investigation of Pixarbio Corporation. Mintz Fraud's interests were never shown to be adverse to its clients. The district court clearly did not understand the underlying facts. The court stated that Mr. Mintz and my disbarment from the bar were due to the SEC's investigation. This was not true. Mr. Mintz and my disbarment in any event are irrelevant and should not even be mentioned as part of the decision. In addition, the court misconstrued the SEC's position. The SEC was not deeply interested in our firm's role in the underlying transactions as set forth in our papers. There were many misstatements in the papers of the SEC's position, which we've pointed out in our papers, but the court misunderstood our involvement in the SEC matter. Our involvement was de minimis and did not rise to a non-waivable conflict. The court's reliance upon green versus green was misplaced and totally distinguishable. This led to the court's determination that the SEC's claims were sufficient to conclude that there was a non-waivable conflict of interest. The court failed to properly distinguish between potential and actual conflicts. Based on cases such as U.S. v. Perez, the conflict needs to be actual and severe to be non-waivable. The initial SEC release of Pixel Bio's stock suspension on January 23, 2017, stated certain factual items with respect to the trading of the stock and information that was disclosed that Minstrad had nothing to do with. One week later, the SEC subpoenaed a number of Pixel Bio and a number of its officers, and Pixel Bio requested our firm to represent it. The next day we received a letter from Jonathan Allen, who is the SEC attorney directing the investigation, that he was concerned that we were representing several individuals at the same time, and we discussed this with the clients, and the clients acknowledged and ultimately waived any conflict. But that was the concern. At that point, based upon what the subject matter of the allegation was, the firm was not a subject of the investigation, and there was factual issues that need to be resolved by discovery, which never took place, as to when, at some point, the firm became the target. But a lot of that was based upon inaccurate facts that the SEC had the right facts, but didn't, I guess the attorneys who drafted the complaint did not review all the investigation documents, and therefore took the position that Minstrad had been wrong. This was acknowledged by the SEC in my deposition in the matter of the SEC versus Henry Sargent and all, which was cited in our papers, where the SEC agreed that paragraph 55 of the complaint was wrong, which stated that Minstrad was representing Pixel Bio commencing August 2016. That was incorrect. There was another law firm that was representing Pixel Bio throughout that transaction. So ultimately, the actual claims against Minstrad related to two opinions that were granted that Rule 144 was available to have shares tradable in the public market. And the question there was, who were the affiliates of the company? There's no finding to date of this matter. If anything, FINRA, the Financial Industry Regulatory Authority, in initially allowing the shares to be publicly traded, reviewed the facts and allowed the stock to be traded. There are charges against Kenneth Stromsland, who ultimately settled with the government, and Frank Reynolds, who ultimately was convicted of fraudulent activities after a trial, that our opinions had nothing to do with the charges that were brought against them. So our firm incurred fees during this investigation, representing the client, about $880,000. We were paid $140,000, leaving about $740,000 unpaid. We started submitting bills to the insurance carrier, Federal Insurance, otherwise known as CHUBB. They started paying our bills. And only when Frank Reynolds wrote them an email claiming that our firm had been paid in full by the issuance of stock did they then stop paying us. But we never received stock from Pixel Buyer. We received some worthless warrants. And there was no basis to this. And unfortunately, the other law firms that wanted to be paid for their services, and Frank Reynolds had to be able to pay his lawyers, which is why he didn't want us to be paid. This is what continued. But there are extensive errors in the appellees' briefs and statements made that we believe the court, if they read our papers, will understand our position. Thank you. Good morning, Your Honors. David Axelrod from Ballard Spahr on behalf of appellees. This case is very straightforward. The district court held that Mintz Fraud was not entitled to any legal fees from its representation in this case because it had, from the onset, an unwaivable conflict. The facts are undisputed, despite my adversary's continued distortion of the record. And what the record is, is this. In January 2017, Mintz Fraud began representing multiple clients in an SEC enforcement investigation, Pixar Bio and its principal, Frank Reynolds. At the very beginning of that representation, the SEC sent a letter to Mintz Fraud on February 1st of 2017, that Supplemental Appendix 62, that warned Mintz Fraud in no uncertain terms that its own conduct, the issuance of certain opinion letters, was part of the investigation. At this point, red lights should have been circling in the eyes of the lawyers at Mintz Fraud. Because they knew that their conduct at that point was part of an SEC investigation. And these Rule 144 letters for people in this area are a hot issue. They've resulted in SEC cases. They've resulted in criminal cases at times. And they certainly would lead to reputational harm if the SEC would bring a case based on misleading letters. But that wasn't just an aside. The SEC continued to warn Mintz Fraud that it had a conflict because of its own conduct in the transactions multiple times. Indeed, Mr. Fraud was deposed by the SEC a couple of months later. And during that deposition, the SEC lawyer went through a colloquy with Mr. Fraud, advising him that his interests may be adverse to his clients. And he agreed that they may be adverse. The SEC then sued Pixar Bio and Frank Reynolds, and specifically in paragraph 53 made mention of the role that Mintz Fraud played in the underlying fraudulent transactions. That's Supplemental Appendix 96 at paragraph 53. And then a year later, the SEC sued Mintz Fraud on the same four letters that allowed free trading stock of Pixar Bio. All of this, from the very start, from the very time that Pixar Bio and Frank Reynolds were subpoenaed, Mintz Fraud knew it had a conflict because of its involvement in the underlying conduct. And it should have not have represented those parties in the SEC investigation. It did so. It continued at its peril. The law is clear. Rule 1782 of the Rules of Professional Conduct says a lawyer shall not represent a client if a reasonable lawyer would conclude that there is a significant risk that the lawyer's professional judgment on behalf of the client will be adversely affected by his lawyer's own financial, business, property, or other personal interests. Clearly, Mintz Fraud had a personal, financial, and business interest in protecting its own reputation from an SEC lawsuit, from a potential criminal investigation, from everything that followed in this case. Comment 10 to Rule 1.7 says if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give the client detached advice. And that's exactly what happened here. This Court has found that in the United States v. Fulton, United States v. Jones, both of those cases, those are criminal cases, disqualified a lawyer when the lawyer had some role in the client's underlying problematic conduct. And that is the same in Green. So I don't mean to say that this should be limited to criminal cases because it certainly shouldn't. In Fulton, Jones, and Consilla, C-A-N-C-I-L-L-A, all mentioned in our briefs, those involve cases where a lawyer was conflicted because of the lawyer's own underlying actions. Lawyer hadn't been charged. There had been no wrong, finding of wrongdoing by the lawyer. But the Second Circuit held that because of the lawyer's underlying involvement in the transactions or conduct at issue, the lawyer had an actual conflict. That actual conflict, in this case, bars Mintz Fraud's claims to professional conduct is not entitled to fees for the service rendered. And that's Schreiber v. Friedman, which is cited in our briefs. Barred attorneys in the State of New York are expected to act as reasonable professionals. Mintz Fraud knew they had a conflict because of their own underlying involvement in the transactions at issue. But yet they took on the relationship and they put themselves at risk. The District Court correctly, on a very certain record, found that Mintz Fraud had an actual unwaivable conflict. That's different than the Perez case, which involved a potential conflict based on representation of multiple defendants. That's not at issue here. Mintz Fraud knew it was possible since 2017 that it would not be paid because of this conflict. It continued on at its own peril. The District Court did not err in any way. Thank you very much for your time. First, we did not know from the onset that there was a non-waivable conflict. We were having the conversations with the SEC on an almost daily basis. It was always a concern on the conflict between... Mr. Axelrod is wrong on that. They made reference to our involvement in the transactions, but as indicated... What do you think that meant when the SEC told you that your involvement in the transactions was at issue? They didn't say it was an issue. They were just pointing out to us that we had a potential conflict. We wrote back that we discussed it with our clients. We believe we did not have a conflict. We got a response back from Jonathan Allen the next day that was part of the record. We basically said, we're not taking any action regarding that. Other lawyers have dealt with government agencies. If they felt that there was a strong conflict, they'll just refuse to deal with us and not continue for a year and a half dealing with us. The fact that there were so many mistakes in their complaint, and Mr. Axelrod keeps referring to our continued involvement, that's all based upon false statements. We were not involved with the acquisition. Another law firm was. We came in after the transaction closed. We were not involved with the actual closing of the transaction. There's another law firm that was involved from August to the end of October. Then we were retained at the end of October to continue representing the client. We thought that the SEC's position here was that they wanted Ken Stromsland, who eventually settled and testified on behalf of the government, to cooperate. We directly raised this with him numerous times and said, hey, he signed letters, that if you want to testify against Frank Reynolds and the company, you should retain separate counsel. We can't continue to represent you. He signed letters acknowledging that, and he continued with our representation. We have letters, and the district court acknowledged that we had letters that were signed by the clients acknowledging the waiver, to which we attached the SEC emails and letters to us so that the clients were fully involved. We quoted those letters in the waiver letters that were signed by the clients so that they were fully aware of what the SEC was telling us, and they continued to want us to be involved. Ultimately, the only issue here was these opinion letters, and they were only fraudulent if we knew that the clients who bought the stock, our clients or who they bought the stock from, were affiliates of the company, and this had been determined originally by FINRA, and there's still no judicial determination if these people were affiliates or not. So we had no knowledge at the time they were affiliates. We acted in good faith. We charged one person we didn't charge for the opinion. The other person we did as part of having acquired the stock we didn't charge for the opinion, because it was a very pro-former opinion, one-page, two-page opinion, saying that based upon all these representations that were made to us, the stock is free trading, and there should have been no issue there, and that's the only item that ultimately the SEC stuck to when they realized that we were not involved long-term representing this client. So with respect to my deposition, we viewed this as the SEC subpoenaed my firm to produce documents. They asked me to testify. They subpoenaed me to the market. My partner and I went up to Boston together. He represented me at the deposition, but that I had a lot of knowledge and information about the background of the case and the parties and some of the factual matters, and the SEC wanted to pick my brain as to what transpired, and with respect to my statement that our interests may be adverse, it was a hypothetical question. Yes, we may have had a conflict, but if you ask me, we didn't have a conflict, but the saying we may have didn't mean that we did. The judge also acknowledged in his decision, we have our own problems with the decision, there's so many falsities in it, but he acknowledged that a complaint is a complaint. There's no truth to the allegations until there's a finding of the allegations. So whatever allegations, whether it's paragraph 53, which the SEC left in there, there are a lot of allegations that we can't prove. Thank you very much. And thank you both for your patience this morning. It's been a long morning. And that's the last case on the calendar this morning, so I'll ask the deputy to adjourn the court. Court stands adjourned.